You may proceed when you are ready. Good morning, your honors. My name is Keith Hilsendecker. I'm with the Federal Public Defender's Office, and I represent the petitioner, Eulandas J. Flowers. I'm going to watch the clock and try to save three minutes for rebuttal. Very well. The district court's conclusion that Mr. Flowers' claim under Miller versus Alabama was procedurally defaulted was wrong for three independently sufficient reasons. First, Arizona's procedural bar about non-retroactivity is not independent of federal law. Second, the state court's sua sponte invocation of the prior litigation procedural bar violated due process and so was not adequate to support the state court's ruling. And third, Mr. Flowers was not eligible for a life without parole sentence because it was opposed under a mandatory sentencing regime. And so a fundamental miscarriage of justice would result if this court, the federal courts, did not review his claim on the merits. This court should therefore reverse and remand for issuance of the writ. I realize that the second issue I flagged is not expressly certified for appeal. I did argue in my opening brief that it's fairly included within the issues that are certified for appeal. So I want to give the court an opportunity to address that sort of threshold question if it's interested. I'm very interested in the third question. Okay. Personally. I mean, I don't want to speak for my colleagues, but I imagine there's interest in the third question as well. Well, the third question is very straightforward. Arizona abolished its parole system six months before Mr. Flowers committed this crime and that made the sentence mandatory. Miller v. Alabama said Arizona has a mandatory sentencing scheme and that should be the end of the question. Mr. Flowers should have been granted relief in state court long ago. This court's decision in Jessup v. Shin, which I assume was going to be your next question, Your Honor, this court's decision in Jessup v. Shin doesn't control here because Jessup was decided under the limitation on relief set forth in AEDPA. AEDPA doesn't govern here because there was no decision on the merits by the state court that last addressed Mr. Flowers' claim on the merits. That court issued a procedural bar and so this court is free to disagree, this panel is free to disagree with the decision in Jessup that there wasn't a mandatory sentencing scheme. I was, Judge Wybee, did you have a question or? I have lots of questions but nothing immediate. Thank you. Okay. That's sort of the nuts and bolts of the answer to my third, to the third question about the merits of the claim. Now, counsel, I imagine opposing counsels come up here and say, whoa, whoa, if you look at the sentencing transcript, the judge was clearly balancing this and balancing this and balancing this. What's your response to that argument, which I think is coming? My response to that, Your Honor, is all of that was an exercise of discretion that state law did not import to the sentencing judge. Two years ago. So the sentencing judge was acting out of bounds? Yes. By considering once. In other words, your argument, I think I anticipate what your argument is, is had the judge decided anything else other than that, he would have been reversed on a government appeal? If the judge had imposed. Given something less than an LWOP, then the government would have taken an appeal and the Arizona Court of Appeals or the Arizona Supreme Court would have reversed the judge? Yes. Because this was error? That is what the Arizona Supreme Court said in Chaparro two years ago, that a sentence that carried the possibility of parole was illegally lenient and was correctable on direct appeal. Yes, Your Honor. But the Arizona Supreme Court also said in Chaparro that any sentence that carried the possibility of parole was illegally lenient. So once the judge here decided against imposing a death sentence, which was a constitutionally available sentence at the time, he had no choice but to impose a sentence that did not carry the possibility of parole. That's what makes it a mandatory sentencing scheme. That's why Mr. Flowers' sentence violates the Eighth Amendment. I have a question about the procedural issue and that is, tell me if I'm reading this right, it seems to me that the applicability of 32.1G in light of Miller was decided in the earlier post-conviction proceeding that was not appealed and then there was a subsequent post-conviction proceeding in which preclusion was applied. Am I reading that correctly? That is, that's correct, Your Honor, but not complete, if I may. Well, the concern that I have then is that I'm not sure that we get to an independent determination of 32.1G in the second one because the preclusion applies not only to the prior decision but to the prior invocation of 32.1G. And so why don't you have preclusion on all aspects of it? I have two answers to that. My first is, that's not my understanding of how Arizona law works. My understanding of how Arizona law works is every time a new round of post-conviction review is initiated, there is a fresh opportunity to apply or to not apply a variety of procedural bars. But in the earlier one, they already decided Miller wasn't sufficient change in the law to invoke 32.1G and then when it's raised again all over, they look at that de novo, whether it's a change in the law even though that's exactly the same question they had before in the earlier one? That's what the Superior Court did here, Your Honor. It looked at the Miller claim in the first and second notices because they're sort of related and said Miller doesn't apply in Arizona because we don't have a mandatory scheme. When Mr. Flowers filed his third post-conviction notice, the court said the same thing. It wasn't until the Arizona Court of Appeals sua sponte raised the prior litigation procedural bar that any procedural issues were in this case at all. And that's my argument why the procedural bar wasn't adequate to support a procedural default. I feel like there's more questions, Your Honor? I certainly would like to have you develop why the Arizona procedural default rules are not independent of federal law. Because the text of Rule 32.1G requires at least a partial review of the merits of the claim. You don't get retroactive application unless the new rule of law would probably have overturned the sentence. And that requires, as Judge Beatty said, an examination of the merits of the Miller claim. That is a classic situation where a state procedural bar is not independent of federal law. It's interwoven with federal law. And under Ake v. Oklahoma, among other cases, that means it's not independent of federal law. But the last-in-time decision by the Arizona Court of Appeals surely would be independent of federal law. Your Honor, it's not. For the same reason? For the same reason. Even though the Arizona Court of Appeals apparently didn't want to have anything to do with looking at the Miller claim because they thought that it was barred? Well, okay, it said, Your Honor, that the claim had previously been litigated. So that's Rule 32.2B. And then the next sentence is, none of the exceptions in Rule 32.2B apply. The exceptions are for claims, let me back up. The exceptions include claims that qualify as a significant change in the law under Rule 32.1G. So in order for the Arizona Court of Appeals to apply the prior litigation procedural bar, it had to determine that there wasn't a significant change in the law under Rule 32.1G. That determination is not independent of federal law. Because it's not independent of Miller? Because it requires an examination of the Miller claim, yes. But if the Miller claim had previously been rejected, then all the Arizona Court of Appeals had to say is, nothing has changed since we last looked at the Miller claim. In other words, there's been no marginal change here since the last time this was before us. That's not what it said, though, Your Honor. It said, none of the exceptions apply. Because the text of Rule 32.1G doesn't limit the scope of the temporal change, the marginal change, to use the phrase that you used, Your Honor, doesn't limit it to just the last time the claim was raised. Last year, in State v. Cruz, the Arizona Supreme Court said, we measure the significant change in the law based on the state of the law at the time the defendant was sentenced. And the state of the law at the time Mr. Flowers was sentenced was, he could have gotten a death sentence, or he could have gotten life without parole. And we get to decide that that's what the Arizona Court of Appeals was doing, even though it didn't explain anything more than that? I think so, yes, Your Honor. I just take the Arizona Court of Appeals at its word based on what it said in the order that it wrote. Based on, also based on the authoritative gloss on Rule 32.1G that the Arizona Supreme Court has placed on it. Counsel, this is kind of an odd question. I'm going to ask it of your opposing counsel as well. But are you aware of any cases that say, in this context, where a minor is sentenced to life in prison, that, let's assume for a moment that there was a Miller violation here. Are you aware of any cases that say procedural default can nevertheless prevent someone from raising a Miller claim? Let's assume, like I said, let's assume it was procedurally defaulted. Let's assume it was a minor who was sentenced to life without parole and there was no discretion, nothing. Are you aware of any law that says you cannot reach the merits of that claim? Despite the procedural default? The usual framework for procedural default includes an escape for fundamental miscarriages of justice. So I don't, I don't think there needs to be any Miller specific case law in that context because I guess, I guess, Your Honor, that may be where we may be headed with that. And I see that my time is expiring, but I want to answer your question. Sure. Maybe where we're headed with that is the question, does the fundamental miscarriage of justice extend to claims of ineligibility for a non-capital sentence? Right, that's my question. And this Court has held that they do in the 2255 escape hatch context. In Allen v. Ives, this Court said that ineligibility for a non-capital sentence, in that case it was ineligibility for a sentence imposed under the mandatory sentencing guidelines. But ineligibility for a non-capital sentence was a way to invoke, to open the escape hatch and use 2241 in that case. And are you aware of any case law that, in this context, on that issue? No, but there is a clear way to extend it. Sure. Allen v. Ives drew for its holding on Boozley, a procedural default case. And Boozley is a 2255 case, but as I pointed out in my brief, the law for procedural default in the 2255 context is the same as the law in the 2254 context. So, you know, by straightforward syllogistic reasoning, Allen v. Ives is the way to open the fundamental miscarriage of justice exception here. I mean, Allen is potentially in play in Jones v. Hendricks in the Supreme Court, which has the issue of the scope of the escape hatch that was construed in Allen, and it also has the 32.1G issue in front of it in the Cruz case. Should we hold this case for those decisions? I'll give you more time, counsel. Don't worry. Jones v. Hendricks is distinguishable because part of the issues in Jones relate to the text of 2255E. Here, by contrast, Your Honor, we're dealing solely with the judge-made procedural default rules. Cruz, I actually thought about this when the Supreme Court granted cert in Cruz. The issue in Cruz about the application of Rule 32.1G is slightly different because it involves the U.S. Supreme Court correcting the Arizona Supreme Court's application of a decision that it should have been following ever since juries were allowed to sentence people to death in Arizona starting in 2002, but it wasn't. This is not quite that situation, and so I think while there may be some overlap between the 32.1G issues here and the 32.1G issues that are before the U.S. Supreme Court in Cruz, that I don't think is a reason for this court to wait to decide this case before the Supreme Court comes out. And with that, I will save the rest of my time for rebuttal. And, Madam Clerk, if you could go ahead and give him three minutes on rebuttal. May it please the Court, Aaron Bennett, Assistant Attorney General for the Epeliz. Are you guys having trouble hearing? Just a little bit. Could you move the microphone? Okay. Is that better? That's better, actually. Okay. There you go. I forget I'm short. Your Honors, on December 13th, 1996, the sentencing court found that Mr. Flower's age of quote 16 years and nine months old at the time of the murder, end quote, was sufficiently substantial to call for leniency. However, the court then went on to say, it is the court's intention as evidenced by the sentence that it is about to impose for this crime that this defendant spend the rest of his natural life incarcerated. This defendant is a danger to the public and that any chance of marked rehabilitation is extremely remote. The public simply needs to be protected from Mr. Flowers. Your Honors, the sentencing judge back in 1996 gave the defendant a Miller hearing. He gave him the Miller considerations. He also said that this sentencing order is not subject to commutation or parole, work furlough, or work release. This is a natural life sentence. But did he just not understand that he didn't have the discretion not to impose an LWOP if death was not imposed? Well, Your Honor, there was the option of release. And so there was a natural life sentence. And then there was also a life sentence, a life with release. And although it. But your opponent says that if he had tried to impose that, it would have been appealed and reversed, but it wasn't authorized. That is incorrect, Your Honor. There was a second option, and that was to give him the opportunity to be released after 25 years. And so that is an incorrect statement by my opposing counsel. Can you point us to where, either in the record or in the statutory scheme, just so we can verify that? Oh, Your Honor, that was in the sentencing statutes. And I apologize, I don't have that sentencing statute in front of me. But that was listed as part of the sentencing options. It was life without parole, yeah, a natural life, death, or a life with the possibility of release after 25 years. And, Your Honor, as far as the Rule 32.1g issue, we actually don't even need to address that because this was precluded, and it was precluded. The preclusion rules in Arizona are definitely independent of federal law. The, he raised, Mr. Flowers raised Miller in his amended, in his February 4th, 2013 amended petition for post-conviction relief. And the court denied his petition. He did not appeal that. He did not petition for review. And then he came back again in June of 2013 and tried to resurrect the Miller claim. And my opposing counsel says that any time that there is a new post-conviction proceeding, you can re-raise the same issue. And that is absolutely not the law in Arizona, and it has not been for, if ever. State v. MATA, Your Honors, 916P2, I'm sorry, P21035, 1996, specifically discusses preclusion and the fact that you cannot continue to raise the same issues over and over again. Is it clear from the Arizona Court of Appeals decision whether they applied preclusion to the issue of whether or not 32.1g applied, or whether they revisited 32.1g directly? Your Honors, I think that, I think that the issue is, they didn't specifically say that it was because of 32.1g, excuse me. But the Court of Appeals did specifically address the fact that this was previously raised. And what it says is Flowers raised the same issue in his previous post-conviction relief proceeding. And he claimed a defendant raised in an earlier post-conviction relief proceeding is precluded. And it says none of the exceptions allowed under Rule 32.2.B apply. And so that suggests that they were applying the exceptions de novo and not saying, well, even the applicability of the exception was previously decided. In theory, they could have said that, but it doesn't seem that that's what they did say. They didn't specifically say that, but again, based on the preclusion rules that you cannot continue to raise the same issues over and over again. Right, but his point is that if they decided the exception, they decided the 32.1g issue, if that has embedded in it the federal question, then it's not independent. And therefore, it's not an adequate and independent ground and isn't a valid bar. I don't think that that's what happened here based on the court's language. I don't think that you can say that they did a Miller analysis, that they did a 32.1g analysis. It just said that there aren't any exceptions. It doesn't mean that they went through every single exception to see if there were any that applied. He specifically raised the issue, the Miller issue, said it was because of 32.1g, and the court rejected that because he previously raised Miller. And your honors, I know that I did not cite state de moda in my response brief, but that, if you look at pages 1048 to 1050, that will clear up any confusion about the preclusion issue and why, for the sake of finality, that you cannot continue to raise repeated claims. Counsel, if I could jump in with a question I asked your opposing counsel. Let's assume for a moment that the claim is procedurally defaulted, but let's also assume that there was no discretion in sentencing, and this individual was sentenced to life without the possibility of parole. Under your reading of the law, is that person just out of luck due to the procedural default? Yes, your honor. So there would be no escape hatch in this situation? No, because that would incentivize defendants to find any kind of loophole to not apply the state law. The reason why the epistandard is that you have to show deference to the state court is because we want to give state courts the opportunity to correct any issues. Let me follow up on that. So let's say the sentence was of death in this case, and so someone who was 16 years old and they committed the crime was going to be executed, but the claim was procedurally defaulted. Are you saying same result, that the execution could go forward due to procedural default? It's hard for me to imagine that, your honor, only because when that came out, we went through and we bounced everybody off of it. No, I'm not talking about practically what happened. I'm talking about legally. Are you saying that there is no actual innocence exception for a Miller claim, either whether it's life without parole or conceivably execution? You're saying there is no exception? Well, in that case, I think it would be. Under Allen v. Ives, he would be innocent of a sentencing enhancement. And so, therefore, there would be an escape hatch available. How is this case different than that? I understand you have a factual distinction. I'm talking legally, though. Assuming that the sentence was life without parole and there was no exception, if in the one situation someone would be actually innocent of the death penalty, I don't see why it would be different that someone wouldn't be actually innocent of the life without parole. Because that is still an eligible sentence. It's not whether or not he was, it doesn't have to do with the sentencing factor or whether he's eligible to receive a life without parole sentence. That's the legal distinction. I guess I'm a little lost here because if the Supreme Court says a minor is not eligible for a life without parole sentence and yet that's the sentence that someone got, aren't they actually innocent of that just as much as they are if the penalty was death? With all due respect, Your Honor, if that were the law, that would be true. However, Miller does not say a juvenile is not allowed to receive a life without parole sentence. No, I'm saying if there was no discretion at the sentencing. But there was discretion. Counsel, I understand. Don't run away from the hypothetical here, okay? I just want to make sure I understand here. The hypothetical is there was no discretion at sentencing. I'm trying to understand what is your understanding of Allen versus Ives and how it applies to the situation. I'm not saying this case, hypothetically. Hypothetically, if there was, I think at that point, then it would go back to Allen v. Ives and an escape hatch because there was, then he would be innocent of a sentencing factor. So if that's the case, then Judge Collins mentioned there are some cases pending before the Supreme Court right now. Wouldn't it make sense for us to see what the Supreme Court tells us in those cases? Your Honors, I apologize. I'm not familiar with the first case that was cited. I am familiar with Cruz, though. And I don't think that the Cruz case has any bearing on this case, especially because this is a preclusion issue under, and that's specifically what was cited, not 32.1G in the Arizona Court of Appeals decision. So, but I think that based on the record, I don't think that we need to wait for any Supreme Court rulings to determine the outcome of this case, however. Are there any further questions? All right. Thank you, Counsel. Thank you. My friend who's seated to my right overlooked the fact that in Lynch v. Arizona, her office told the U.S. Supreme Court that release under what was then Section 13703 did not mean parole. It is true, as my friend says, that the sentencing statute for first-degree murder gave the judge the option to make Mr. Flowers eligible for release. But because release doesn't mean parole, something that the Arizona Supreme Court reconfirmed in Chaparro, whatever the discretion that the sentencing judge had was not the discretion that he was required to have under Miller v. Alabama. The reason there's a Miller violation. Wouldn't release be a more favorable status than eligibility for parole? No, Your Honor. Under Arizona law, the only kind of release that the judge could have made Mr. Flowers eligible for was executive clemency. And the U.S. Supreme Court has been very clear that executive clemency, the possibility of executive clemency does not substitute for parole in terms of Eighth Amendment analysis. So I'm looking at the Arizona statute 13703A. An order sentencing the defendant to natural life is not subject to commutation or parole, work furlough, or work release. If the court does not sentence the defendant to natural life, the defendant shall not be released on any basis until the completion of the service of 25 calendar years. Now, what kind of release can he get? You're saying he can only get commutation? That's correct. But the prior sentence refers to commutation, parole, work furlough, and work release. But parole had been abolished when Mr. Flowers was sentenced. That's in, and I'm going to rattle off the statute so that perhaps your law clerks can take it down, Your Honor. It's Arizona Statute 41-1604.09. Did that affect the other basis that are also referred to here? That would be work furlough or work release? No. That statute in Title 41 only deals with the abolition of parole. And those other forms of release, which the Arizona Attorney General conceded in the Lynch case, don't include parole. Those possible options are not an adequate substitute for parole, which is an option that makes the sentencing scheme constitutional. Here's one of the problems I have with this case. And I'm wondering whether the real procedural default is the failure to appeal the first round. Because normally, as I understand it under Yiltsin and other cases, we don't care about state preclusion doctrines. You know, the fact that you go back to another round of postconviction proceeding in state court is irrelevant, and the fact they apply a preclusion is irrelevant because you're not required to do that to go to federal court. Once you've exhausted the claim once, you can go to federal court. But he didn't exhaust the claim the first round because it wasn't appealed. And so the reason why you look at the successive rounds is the state might forgive the first procedural and give you the merits ruling that you can then take to federal court. So the issue then, it seems to me, is did you get a merits federal ruling in the subsequent rounds? Not whether there was a state procedural bar. That doesn't really seem to be the right focus. It's did you get a merits ruling that would cure the procedural default from the first round? And that, I guess, your argument is embedded in the 32.1G is the federal ruling. But is, am I viewing this correctly in the way I've just described it? Your Honor, yes, for the most part. The way I understand the procedural default analysis to work is set forth in the section of my opening brief where I talk about the scope of the COA. Those are those five questions that you have to ask. And one of those questions is, did the state court actually impose a procedural bar? And if so, is that procedural bar independent and adequate to support a procedural default? Here, the Superior Court did, as you say, your Honor, forgive the failure to appeal the denial of the second post-conviction. It addressed Mr. Flowers' claim on the merits. He presented the trial court did, but not the court of appeals. Well, the court of appeals didn't give Mr. Flowers adequate notice and an opportunity to explain why it was proper to reach the merits, notwithstanding the failure to appeal a previous round of post-conviction relief. That's the reason it's not adequate. The procedural bar is not adequate to support a federal procedural default. I see the red light is on, but I want to answer any questions you might have. No. Yeah, I have a question about the remedy. So what is it that you want here? A rebalancing? Yeah, in order directing the Department of Corrections. And how would the resentencing look different from what he actually got in 1996? How would it look different? Well, first of all, there wouldn't be a thumb on the scale for the death penalty. I think that all of these cases that I've handled, all of these clients of mine were sentenced in the 90s when death was an available option. And that colors the judge's exercise of discretion. The judge here can say, well, I don't think he should get off, get out of prison ever, and that sounds like leniency because the other thing I decided against was an execution. Here, if he goes back to the Supreme Court for resentencing, the judge will know that death is not an option. He will know that, or she will know that parole is not available and exercised the correct measure of discretion, something that was never, never done for him in 1996. And with that, I will ask this court to reverse. All right, thank you very much, counsel. Thank you to both counsel for their briefing and argument in this case. This matter is submitted.
judges: BYBEE, OWENS, COLLINS